[Crim. No. 6852.   Second Dist., Div. One.   July 29, 1960.]

THE PEOPLE, Respondent, v. LLOYD SERGENT, Appellant.

Earl Klein, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from an order denying a motion for a new trial and the judgment wherein defendant was convicted on two counts of forgery.

In an information filed in Los Angeles County the defendant was charged in Count I with a violation of section 470 Penal Code in that he did, on or about February 20, 1959, with intent to cheat certain named persons, forge a check for the payment of money in the sum of $96.41 and did then pass the same knowing that such check was forged. In Count II the defendant was charged with committing substantially the same offense as set forth in Count I, on February 22, 1959. He pleaded not guilty. A jury trial was properly waived. On stipulation the matter was submitted on the testimony contained in the transcript of the preliminary hearing and further that both sides could present additional testimony. The defendant was found guilty and sentenced to the state prison.

With reference to Count I, the evidence disclosed that Mr. Katzman was the proprietor of a surplus goods store in Burbank on February 20, 1959, and that on that date a Mr. Deering presented to him a form of printed check with the name "Sergent's Body Shop" printed at the top. The check was to the order of Deering for $96.41 and was signed "W. B. Sergent" as the maker and drawn on the Security First National Bank of Los Angeles, Burbank Branch. Deering endorsed the name "John W. Deering" on the check in Katzman's presence and in exchange therefor Katzman gave Deering merchandise and cash. Katzman never received payment on the check.

With reference to Count II, the evidence disclosed that Paul Frazier was the owner of an automobile sales company in Los Angeles on February 22, 1959. On that date a check in the

same form and amount as the check referred to in Count I was presented by Deering to Frazier for a 1950 model automobile and some cash. Deering endorsed the check in Frazier's presence at the place of business.

The checks as presented to Frazier and Katzman were of the type customarily used in the business of Bill Sergent, the proprietor of Sergent's Body Shop. The checks in question were missing from the place of business of Sergent on February 22, 1959. Only Marian Sergent and Bill Sergent were authorized to sign checks against the account at the bank and the signature ''W. B. Sergent'' on each of the checks was not the signature of Bill Sergent or Marian Sergent and no one was authorized or had permission to sign the name of W. B. Sergent. The defendant was the brother of Bill Sergent. There was no employer-employee relationship between the defendant and Bill Sergent.

The defendant was arrested in Phoenix, Arizona on or about March 4, 1959. On March 7, 1959, Officer Koskie of the Glendale Police Department talked with the defendant at the jail in Phoenix. The defendant was shown reproductions of the checks in question and defendant stated to the officer that he ''had made out the face of these checks in their entirety, and at no time had he been authorized by his brother Bill Sergent to sign his name on any checks or to sign his name on any papers.''

On March 10, 1959, at the Glendale jail the officer showed the checks in question to the defendant and the defendant identified the handwriting on the faces of the checks as being his and ''again stated he had never (sic) permission to sign his brother's name on checks.''

The defendant was an escapee from the Ohio State Prison, having been committed there for grand larceny in 1953 and having escaped in 1956. He said he had come to California about five months before the date of the trial.

The appellant asserts that because the deputy district attorney in identifying the check used in the Frazier transaction on one occasion inadvertently referred to the check as being one signed by ''Lloyd Sergent'' that he could not be convicted of forgery, because all he did, according to the statement of the deputy district attorney, was to sign his own name. The check itself, which we have examined, is signed ''W. B. Sergent.'' Further, it is apparent from the record that the prosecutor mistakenly used the name ''Lloyd'' instead of ''W. B. Sergent'' in the one instance. In every other place

in the transcript the check is correctly described as having been signed "W. B. Sergent."

Appellant's next contention is that the extradition procedure by which he was brought into this state violated his constitutional rights. He testified that he was arrested in Phoenix, Arizona without a warrant and that he signed a blank waiver of extradition, that he assumed that he was to go back to Ohio to finish out his prison term in that state with the added charge of escape. Further he stated that he was not advised in Phoenix of his right to counsel and he was not taken before a court in that city. His theory is that because of what was done to him in Arizona his return to California was illegal and therefore the court in California had no jurisdiction to proceed with the matter of the charges set forth in the information.

█ The court in *People* v. *Pratt*, 78 Cal. 345, 349-350 [20 P. 731] stated:

"The defendant being before the proper court, which had jurisdiction of his offense, it matters not how he may have entered into the presence of the court, it was its duty to try him.

" 'The jurisdiction of the court in which the individual is found is not impaired by the manner in which the accused is brought before it.' (*Mahon* v. *Justice,* 127 U.S. 708 [8 S.Ct. 1204, 32 L.Ed. 283], and cases cited.)

" 'It would indeed be a strange conclusion if a party charged with a criminal offense could be excused from answering the government whose laws he had violated, because other parties had done violence to him, and also committed an offense against the laws of another state.' (*Mahon* v. *Justice,* 127 U.S. 712 [8 S.Ct. 1204, 32 L.Ed. 283]; *Ex parte Ah Men,* 77 Cal. 198 [19 P. 380, 11 Am.St.Rep. 263].)

"The governor of the state cannot oust the courts of the commonwealth of their right to try an individual charged with an offense over which they have jurisdiction, because of the fact that he has been instrumental in having the defendant there, by violation of his personal rights. It will not do to say that a fugitive from justice can escape the punishment for his crime because the governor of a state may have violated some law. The people of a state are not bound by any illegal act of their governor, nor should they be."

█ Even assuming that the defendant was in effect "kidnapped" and brought to California for trial without proper extradition proceedings, it would be no ground for the reversal

of the judgment in this case. The defendant received a fair and impartial trial in this state, with adequate constitutional safeguards, and the evidence of his guilt is overwhelming. (See *Pettibone* v. *Nichols*, 203 U.S. 192, 206 [27 S.Ct. 111, 51 L.Ed. 143] ; *People* v. *Millwood*, 150 Cal.App.2d 154, 156 [309 P.2d 495] ; *People* v. *Youders*, 96 Cal.App.2d 562, 568 [215 P. 2d 743].)

In the case of *Frisbie* v. *Collins*, 342 U.S. 519 [72 S.Ct. 509, 96 L.Ed. 541], Collins, in a petition in habeas corpus alleged that while he was living in Chicago, Michigan officers forcibly seized, handcuffed, blackjacked and took him to Michigan where he was convicted of murder and was then serving a life sentence. Collins claimed that the trial and conviction under such circumstances were in violation of the due process clause of the 14th amendment. The court stated :

"This Court has never departed from the rule announced in *Ker* v. *Illinois*, 119 US 436, 444, 30 L ed 421, 7 S Ct 225, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will."

In the note immediately following the opinion it is set forth :

"Where a person accused of crime is found within the territorial jurisdiction wherein he is so charged, and is held under process legally issued from a court of that jurisdiction, neither the jurisdiction of the court nor the right to put him on trial for the offense charged is impaired by the manner in which he was brought from another jurisdiction, whether by kidnaping, illegal arrest, abduction, or irregular extradition proceedings. *Ker* v. *Illinois* (1886), 119 US 436, 30 L ed 421, 7 S Ct 225 (kidnaping in foreign country) ; *Mahon* v. *Justice* (1888) 127 US 700, 32 L ed 283, 8 S Ct 1204 (kidnaping in sister state) ; *Cook* v. *Hart* (1892) 146 US 183, 36 L ed 934, 13 S Ct 40 (kidnaping in sister state) ; *Lascelles* v. *Georgia* (1893) 148 US 537, 37 L ed 549, 13 S Ct 687 (defendant's trial for offense other than that specified in the requisition for his extradition from sister state) ; *Re Johnson* (1897) 167 US 120, 42 L ed 103, 17 S Ct 735 (recognizing rule) ; *Adams* v. *New York*

(1904) 192 US 585, 48 L ed 575, 24 S Ct 372 (recognizing rule) ; *Pettibone* v. *Nichols* (1906) 203 US 192, 51 L ed 148, 27 S Ct 111, 7 Ann Cas 1047, followed in *Moyer* v. *Nichols* (1906) 203 US 221, 51 L ed 160, 27 S Ct 121 (irregularity of proceedings for extradition from sister state). See annotation in 165 ALR 947. See also notes in 27 Ind LJ 292 (1952) ; and 27 Notre Dame Law 280 (1952). . . .''

In *Mahon* v. *Justice*, 127 U.S. 700 [8 S.Ct. 1204, 32 L.Ed. 283], Mr. Justice Field, speaking for a majority of the court, said for the court:

''So in this case, it is contended that, because under the Constitution and laws of the United States a fugitive from justice from one State to another can be surrendered to the State where the crime was committed, upon proper proceedings taken, he has the right of asylum in the State to which he has fled, unless removed in conformity with such proceedings, and that this right can be enforced in the courts of the United States. But the plain answer to this contention is that the laws of the United States do not recognize any such right of asylum, as is here claimed, on the part of a fugitive from justice in any State to which he has fled ; nor have they, as already stated, made any provision for the return of parties who, by violence and without lawful authority, have been abducted from a State. There is, therefore, no authority in the courts of the United States to act upon any such alleged right. In *Ker* v. *Illinois* the court said that the question of how far the forcible seizure of the defendant in another country, and his conveyance by violence, force, or fraud to this country could be made available to resist trial in the state court for the offense charged upon him, was one which it did not feel called upon to decide, for in that transaction it did not see that the Constitution, or laws, or treaties of the United States guaranteed to him any protection. So in this case we say that, whatever effect may be given by the state court to the illegal mode in which the defendant was brought from another State, no right, secured under the Constitution or laws of the United States, was violated by his arrest in Kentucky, and imprisonment there, upon the indictments found against him for murder in that State.''

It is apparent that there is no merit to either of the contentions of the appellant.

The order denying the motion for a new trial is affirmed. The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.