[Crim. No. 7220. Second Dist., Div. One. Nov. 1, 1960.]

THE PEOPLE, Respondent, v. MIKE ENCINAS et al., Defendants; CHARLES J. HANDY, Appellant.

14

Charles J. Handy, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

LILLIE, J.—On December 15, 1959, Indictment Number 222242 was returned against defendants Handy and Encinas charging them with selling marijuana in violation of section 11531 of the Health and Safety Code, and Handy with a prior misdemeanor conviction under section 11500. Defendant Handy admitted the prior conviction; and on their pleas of not guilty to the main charge the jury returned a verdict of guilty against both defendants. Only Handy appeals from the judgment of conviction.

Appellant raises numerous claims of error which relate mainly to the time within which he was brought to trial, the sufficiency of the indictment, the admission of certain evidence, the conduct of the trial judge and the representation given him by his counsel.

Referring to the contention that the lower court erred in denying his motion to dismiss the indictment for failure to bring him to trial within 60 days from the filing of the same, appellant submits that he refused to waive time on February 15, the day his trial commenced, and argues variously that in any event he had no opportunity during any of the prior pro-

ceedings to object to the setting of the trial past the 60-day period, that in fact he did voice objection, and that he did refuse to waive time.

The truth of his representation that on the first day of trial, February 15, 1960, he refused to waive the 60-day period, is not borne out by the record; on the contrary, it expressly shows that on the 15th of February no mention whatever in that connection was made of his trial under the indictment in the instant case (No. 222242), and that it was not until the second day of the trial (February 16) that any such objection was interposed. However, the record reveals that on February 15 Handy did refuse to waive time for trial on *another* indictment, Number 222243 (under which he had also been charged with a different offense), which had been set for trial on the same day but not then commenced; on that day both cases were called and case Number 222242 proceeded to trial, the court having ordered proceedings under 222243 to trail during the pendency of the trial in the instant case. Before the afternoon adjournment, but after the jury panel had been excused from the courtroom, Handy's counsel, expressly referring only to the ''trailing'' case (No. 222243) advised the trial judge, ''defendant does not waive his time for trial in that case.'' On that day he made no mention of case Number 222242. However, the next day and the second day of trial, February 16, counsel made his first reference, and his only objection, to trial of case Number 222242 by moving for a dismissal of the indictment on the ground that the 60-day period within which he could be tried thereunder had expired. (Pen. Code, § 1382.) The motion was denied.

Appellant's attempt to impress us with his various claims— on the one hand, that during the proceedings prior to trial he had no opportunity to object to the setting of his trial past the 60-day period; and on the other, that he did object and he refused to waive time for the trial or consent to trial at a later date, is no more successful. It is not only based entirely upon matters outside the record, there being an absence of any transcript of what occurred at any of the proceedings had prior to trial (the only reference to previous hearings was two minute orders dated December 23, 1959, showing the appointment of the public defender and Handy's arraignment, and January 7, 1960, disclosing his not guilty pleas and the setting of both cases for trial on February 15, neither of which discloses any objection to or waiver of time of trial); but the truth of his claims is questionable in view of his tacit admission

to the contrary when, prior to denying his motion to dismiss Indictment Number 222242 he and his counsel remained silent when the trial judge called defendant's attention to the fact that he had never previously during the 60-day period (particularly on January 7, 1960, at the time of setting) objected to the trial date.

■■■ We have no doubt that the first objection to the lower court concerning the time of trial in case Number 222242 was made on the second day of trial, which fell outside the 60 days; thus for his failure to object within the statutory period, objection cannot thereafter be validly made (*People* v. *O'Leary*, 130 Cal.App.2d 430 [278 P.2d 933]); and for his failure to object at the time the cause was set for trial, his consent thereto is presumed. (*People* v. *Taylor*, 52 Cal.2d 91 [338 P.2d 337]; *Ray* v. *Superior Court*, 208 Cal. 357 [281 P. 391]; *People* v. *Anderson*, 126 Cal.App.2d 702 [272 P.2d 805].) Appellant's consent being implied and he having waived objections (*People* v. *Anderson*, 126 Cal.App.2d 702 [272 P.2d 805]), the trial court properly denied the motion.

Other claims that appellant was denied certain rights on proceedings preliminary to trial we refrain from discussing inasmuch as they are based entirely upon matters not appearing in the record.

Appellant's second assignment of error concerning the competency of the evidence supporting the indictment, is predicated upon the argument that testimony was received by the grand jury outside his presence in violation of section 865, Penal Code; that Officer Tusan falsely testified before the grand jury; and that the officer's evidence was obtained as a result of ''conspiracy and entrapment'' by ''unlawful means and manner'' in which he conspired with an informer to ''investigate'' him to commit the crime. Here again appellant argues and relies upon matters wholly outside the record.

■■ Inasmuch as the transcript of the grand jury proceedings is not part of this record and the evidence taken before it is not before us, his contention that the indictment was based on incompetent evidence cannot be considered.. (*People* v. *Garza*, 160 Cal.App.2d 538 [325 P.2d 200].) Further, section 865, Penal Code, does not refer to hearings before the grand jury but applies to an entirely different procedure—the preliminary examination before a committing magistrate. (Pt. II, tit. III, ch. VII, ''Examination of the Case, and Discharge of the defendant, or Holding Him to Answer.'' Pen. Code, §§ 858-883.)

In connection with appellant's further contention that a tape-recorded conversation between him and the officers was improperly admitted in evidence as having been made without his knowledge and after his arrest, prior to arraignment on the indictment and appointment of counsel, we briefly relate the evidence viewed in the light most favorable to the respondent.

On November 4, 1959, Tusan, an undercover narcotics officer, and a male companion, went to Gloria's Bar on Third Street where they saw defendants Handy and Encinas. Tusan talked with Handy who asked him if he and his companion wanted to buy marijuana; the officer answered in the negative. A short time later in another conversation Tusan asked Handy if he knew where a can of marijuana could be purchased; Handy said he would find out if it could be arranged and walked over to Encinas where they talked; whereupon Encinas nodded his head toward Tusan to indicate that a purchase could be made. The four left the bar together and drove in the officer's car directed by Encinas to a place on Figueroa near Temple Street. When the officer parked the car, Encinas told him the price was $12.50. Encinas left but soon returned and asked Tusan to drive up closer to the place of sale, which he did. Encinas then asked the officer for the money; the officer gave $13 to Handy who in turn gave it to Encinas. The latter left and returned five minutes later giving Tusan a paper sack of marijuana. The officer then drove Handy and Encinas back to the bar.

Encinas' defense was mistaken identity. Handy admitted that he had been in the bar and the car with the officer and his companion and one Mike (not Encinas), but denied that he knew a narcotic transaction was taking place and that he was a party thereto.

At the end of the People's case a tape recording of a conversation between Sergeants Tralle and Walker, Tusan and Handy containing certain admissions of Handy, made in the police building on December 21, 1959, around 10 a. m. after the latter's arrest, was played to the jury. However, before it was admitted, Sergeant Tralle testified that prior to the conversation, Handy was offered no inducement; no force or violence, or threats of force or violence were used or made to induce him to talk; and that Handy talked to the officers freely and voluntarily. The officer also laid a proper foundation identifying the voices on the tape and establishing the accuracy of the recording; he further testified that they did

not advise defendant his conversation was being recorded. Handy's counsel on *voir dire* questioned Sergeant Tralle concerning the conditions under which the conversation was recorded; thereafter, without objection, the tape was played to the jury. Any objections made by defendant's counsel prior to his *voir dire* examination of Tralle did not relate to any of the grounds urged on this appeal; and appellant's present objections to the playing of the tape have never before been made. In fact, defense counsel conceded at the trial before the tape was played that the lack of defendant's knowledge that his conversation was being recorded does not in any way affect its admissibility. Said the trial judge: ". . . you are not suggesting that, in order to make this evidence admissible, the defendant Handy had to know it was being recorded? Mr. Olsen (Handy's counsel) replied: "*No,* I am trying to find out whether he did know." (Emphasis added.)

Nor affecting the admissibility of the conversation is the fact that it occurred within the 48-hour period prior to his arraignment, or at a time when defendant was not represented by counsel. The test used in determining the admissibility of such statement is—considering all of the circumstances, whether it was freely and voluntarily given by the accused without any inducement held out to him. Delay in arraignment is only one of the factors to be considered in that connection and does not in itself render the conversation inadmissible (*Rogers* v. *Superior Court,* 46 Cal.2d 3 [291 P.2d 929]); as is the fact that at the time defendant's counsel was absent (*People* v. *Aguilar,* 140 Cal.App. 87 [35 P.2d 137, 142]) or the accused was not advised of his right to remain silent or advised of his right to counsel or that what he says may be used against him. (*People* v. *Hoyt,* 20 Cal.2d 306 [125 P.2d 29]; *People* v. *Tipton,* 48 Cal.2d 389 [309 P.2d 813].) There is no contention here that the statements attributed to defendant were involuntarily made; moreover, the voluntary nature of the admissions contained in the conversation recorded by the police appears without question from the other evidence.

Assigned as additional error is the asserted undue and prejudiced assistance the trial judge gave the deputy district attorney. We note that the examples he cites occurred out of the presence of the jury; in consideration of the entire transcript they reflect nothing more than the judge's proper effort to clarify the issues for the trier of fact and expedite the trial of the matter. We find nothing in the record to show

that the judge was in any manner prejudiced against defendant or his cause; on the contrary, it reveals the patience and deliberation of a conscientious judge giving full protection of all rights to the accused and fair consideration of all matters presented to him whether by the deputy district attorney or the defense counsel.

We feel much the same concerning appellant's argument that his counsel did not properly represent him in that he did not "offer a competent defense" in his behalf, and that he "influenced" him to admit a prior conviction and to take the witness stand.

A deputy public defender was appointed to represent defendant in December 1959. The record reveals no objection to such representation, or any point of difference between Handy and his counsel at any time before, during or after the trial. It establishes that counsel was active in cross-examining the prosecution's witnesses during the trial, much more so than counsel for the codefendant; that at every opportunity proper objections were made on behalf of defendant; that his failure to act in the manner now urged by defendant was fully justified; that before Handy's admissions were received in evidence, he extensively examined the police officer on *voir dire*; that he sought to protect the rights of his client throughout the proceedings; and that he presented the defense offered by Handy with a complete understanding of the people's case and what he was told by his client.

As to the defendant's admission of the prior conviction, on the second day of trial before the jury was brought into the court room the trial judge said: ". . . if the defendant is desirous of changing his plea, as far as the prior offense is concerned, he should have the opportunity to do so, in the absence of jury," to which defendant's counsel stated in the presence of the accused: "[D]efendant admits that prior violation. . . ." The trial judge then directing his remarks to Handy, said: "[I]n other words, it is your desire, Mr. Handy, to admit that conviction?"; to which the defendant replied, "Yes sir." Neither at the time Handy was asked by the court if that was what he desired to do, at which time he had the opportunity to object, nor at any other time thereafter before the lower court did defendant assert as here that his admission was unduly influenced by counsel. The record reveals nothing more than that defendant's admission was the result of his willingness to dispose of the issue of the prior misdemeanor in a fashion that would not bring it to the atten-

tion of the jury. We assume, nothing appearing to the contrary, that Handy and his counsel as in all cases, discussed the matter of the prior before his admission of its truth; that counsel advised him that it, in his judgment, would be better to admit the conviction; and defendant accepted the advice. We find nothing in the record to show that the defense counsel's advice was not based upon his best judgment.

Nor does the record reveal that defendant was in any way unduly "influenced" by counsel to take the witness stand. Without defendant's denial of any participation in the narcotics transaction, his conviction under the People's case was a certainty, particularly in view of his extrajudicial admissions, for the prosecution's evidence left no doubt concerning Handy's identity and his knowing participation in the crime. His testimony, such as it was, did create a factual conflict concerning what occurred and the matter of his intent and knowledge; the fact that the jury disbelieved it and accepted the version of the police officers reflects upon neither counsel's ability nor his judgment in presenting the defense offered by his client. Handy apparently previously related to his counsel as true that which he told from the witness stand; it is also apparent that defendant himself limited his defense to lack of participation in the narcotics transaction. That which defense counsel can present to the trier of fact as a defense is often only as good as his client's testimony and that brought out through the cross-examination of the People's witnesses, will allow. Here the codefendant presented quite a different defense—he claimed he was not there—and failed in any way to assist Handy; while the latter claimed he was present but was unaware of what was transpiring and did not participate in any illegal transaction.

The guilt of Handy is apparent from the evidence and we find nothing in the record to show that he was not properly and well represented and fairly tried.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied November 25, 1960, and appellant's petition for a hearing by the Supreme Court was denied December 28, 1960.