[Crim. No. 1710. Fourth Dist. Nov. 7, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES MITCHELL, Defendant and Appellant.

James Mitchell, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

SHEPARD, J.—This is an appeal by defendant from a judgment of conviction of burglary, second degree (violation of Pen. Code, § 459). While the notice of appeal and appellant's briefs are not in proper form, appellant is in propria persona and in the interests of justice they will be liberally construed so as to permit a hearing on the merits. (Cal. Rules of Court, rule 31(b)*; *People* v. *Lollis,* 177 Cal.App.2d 665, 666, 667 [2 Cal.Rptr. 420].) After all the briefs were filed defendant made application for counsel on appeal, which was denied.

Defendant was accused by information with burglary in violation of Penal Code section 459 in that he unlawfully entered the office of Hubbs Trucking in Colton, California with the intent to steal. Two prior felony convictions were alleged. Defendant refused to enter a plea and a plea of not guilty was entered on his behalf by the court. Defendant admitted the two priors at the time of trial.

FACTS

On March 1, 1961, at 7 p. m., a dispatcher for A. S. Hubbs Trucking locked up the office. The windows and doors were closed and no one was inside. On March 2, 1961, between 5 :30 and 6 a. m., the dispatcher opened up the office. He noticed a heavy smell of cigarette smoke. He observed that the office safe was lying on its back with its doors wide open. A pipe and a heavy piece of iron were on the floor. He also observed

---

*Formerly Rules on Appeal, rule 31(b).

on the floor three piles of $20 bills. A fill-in board from a window had been pushed inside and was on the floor. A large window at the opposite end of the room was open. The dispatcher called the owner, Mr. Hubbs, and the police.

Mr. Hubbs testified that when he left his office on March 1, 1961, the safe was closed and locked, with $7,500 in cash in it. He used the money once in a while in his business. No one else knew of the money. He testified that there were 32 $100 bills in an envelope; about 50 $50 bills; two or three envelopes of $20 bills, and 50 $1.00 bills. There was $960 in $20 bills on the floor, the contents of one envelope which had that amount marked on it. All the other envelopes of money were gone. The $1.00 bills had all been new two or three years ago and were in sequence. Thirty-two $100 bills, 40 $50 bills, 5 $20 bills, 60 $10 bills, 7 $5.00 bills and 12 $1.00 bills were produced in court and received in evidence. Hubbs identified a cut on a $50 bill as that made by him with a razor and as having been in the safe on March 1, 1961. Hubbs also identified 6 $100 bills that had been stapled together and one of which had an iron-brown stain on it, as having been in his safe. Hubbs further identified some indelible ink marks on two bills as being from a pen in his safe.

A waitress at the Coffee Terminal on Highway 99 two or three blocks from Hubbs' office, testified she waited on defendant on March 2 between 3:30 and 5 p. m.

A Customs Inspector testified that on March 4, 1961, at 10:15 a. m. he was on duty at San Luis, Arizona, where he observed defendant approaching the United States from Mexico, dressed in a pair of Levis, field jacket, cap and boots. When asked what he bought in Mexico, defendant showed a sales slip and an expensive wrist watch and said he bought nothing else. Because of the expensive watch ($450), defendant was asked to identify himself. He produced a wallet made in Mexico. The Customs Inspector observed a considerable amount of money in the wallet. Defendant said he was a farm worker and did a lot of gambling. When asked to come to the Customs house for a search and further examination he consented without protest. A Border Patrolman was called in to witness the search. During the search, a sheath-knife with a large blade was found in defendant's back pocket, attached to his belt. Two other watches, some rings, two bracelets and some 38 cartridges were found on defendant. He also had a jail receipt showing his release less than a month before from El Centro jail. Over $5,300 was found in defendant's wallet.

Defendant would not answer questions as to how he got the money or what kind of gambling he did.

The border patrolman counted the money independently and also found more than $5,300 in defendant's wallet. He called the sheriff's office as he was suspicious of defendant because of the jail release slip which showed defendant had been in jail less than a month before with not more than $30 and now he had over $5,300. Two deputy sheriffs from Yuma County arrived and questioned defendant about the money. They asked him, "Is this your money?" Defendant replied, "It's in my possession, isn't it?" When asked where he got it, defendant replied, "I could have got it gambling." The deputies counted the money and took down the serial numbers which were identified at the time of trial. One of the deputies called the sheriff's office in Yuma, where he talked with the under-sheriff, gave defendant's name and told of the amount of money, evasive answers, jail release slip and knife. The under-sheriff checked out the name and discovered that a "James Mitchell" had a burglary history and had been in the Yuma jail, and if it was the same man it was a felony for him to have a knife. Defendant and the money were taken to the sheriff's office in Yuma. A .38 special detective pistol belonging to defendant was recovered from a bus locker. Defendant was found to have a felony record and was charged with violation of Arizona statute No. 13919—a Felon in Possession of a Lethal Weapon. The under-sheriff counted the money, totalling $5,411, listed the serial numbers and deposited it in the safe in the sheriff's office. He identified the money at the time of trial. When asked about the money defendant either made no comment or said, "It was in my possession, wasn't it?"; "It's up to you to find out"; or "You tell me."

An all-points bulletin was sent out regarding a burglary or robbery involving a large amount of money. A detective sergeant from the Colton Police Department came to Yuma on March 5, in response to the teletype message. On March 6, Mr. Hubbs and the waitress from the Coffee Terminal, who had identified defendant from a picture, arrived in Yuma where she identified defendant in a line up, and Hubbs identified a $50 bill as having a cut by which he had marked it. The waitress had been shown a picture of defendant with a mustache but he did not have one in the line up. The money was turned over to the Colton police after defendant was extradited. At the trial the detective sergeant from the Colton Police Department identified the serial numbers on the money

as the same as he had picked up from the Yuma sheriff's office. A criminalist who examined the money identified six $100 bills as having apparently been stapled together and testified that one of them had an iron rust-colored stain on it.

Defendant did not testify or produce any witnesses.

Defendant's counsel offered an affidavit in regard to his extradition, which was rejected as not a matter before the court. A request for a return of verdict of not guilty was denied. The jury returned a verdict of guilty of second degree burglary. Defendant's motion for a new trial was denied and he appeals in propria persona.

### SEARCH AND SEIZURE AND ARREST

■ Defendant contends that the evidence introduced against him was the result of an illegal search and seizure and arrest in Arizona. With this we cannot agree. The Customs Inspector properly became suspicious when he observed defendant's dress, his expensive watch, the large amount of money in his Mexican wallet, and heard defendant's explanation. Defendant did not protest the search. The search which customs inspectors are authorized to conduct upon entry is of the broadest possible character and is governed by federal law and there is no question of "probable cause" under state law. (19 U.S.C.A. § 482; *Murgia* v. *United States*, 285 F.2d 14, 18 [5].) As stated in this case at page 17 [2],

"The right of border search does not depend on probable cause. [Citing cases.] '[The] searches of persons entering the United States from a foreign country are in a separate category from searches generally . . . [and] "are totally different things from a search for and seizure of a man's private books and papers. . . ." ' [Citing cases.]"

All persons coming into the United States from foreign countries are liable to detention and search by authorized agents of the government. (19 U.S.C.A. § 1582.) ■ Defendant's detention, incidental to this search, did not amount to an arrest. (*United States* v. *Jones*, 184 F.Supp. 328, 330, 331 [1].)

■ The deputy sheriff had reasonable cause to arrest defendant and seize the money. He knew "a James Mitchell" had a history of two prior felonies and a record in the Yuma jail. Defendant James Mitchell was carrying a lethal weapon, a large sum of money and expensive jewelry and gave evasive answers concerning the money; it was certainly reasonable for the arresting deputies to have a strong suspicion defendant was guilty of violating Arizona statute 13919—A Felon in

Possession of a Lethal Weapon. Later, in fact, he was so charged when he was taken to the sheriff's office and found to be the James Mitchell with the felony record. Under any standard the deputies had probable cause to believe defendant was guilty of a felony. (6 C.J.S. § 6b[2], pp. 587, 588; § 6d[1], pp. 596-598.) There was no illegal search and seizure or arrest. The evidence was properly admitted.

## EXTRADITION

Defendant contends his extradition from Arizona was obtained by a fraudulent police affidavit that stated the serial numbers of the stolen money matched the serial numbers on the money recovered from defendant. He also contends that the waitress testified at the extradition hearing she saw defendant at 3 a. m., while at the trial she said it was in the afternoon. Therefore defendant urges he was illegally before the trial court and that the court committed error in not permitting him to put in evidence regarding his extradition and that the jury would not have convicted him if they had known how he was extradited. We are unable to agree that extradition was unlawful but it is unnecessary to discuss the question in detail, for even assuming defendant's extradition was improper, this does not impair the jurisdiction of the trial court nor require a reversal of a judgment of conviction. (*People* v. *Stoliker*, 192 Cal.App.2d 263, 267, 268 [4-5] [13 Cal.Rptr. 437]; *People* v. *Sergent*, 183 Cal.App.2d 342, 345- 347 [2-3] [6 Cal.Rptr. 576]; *People* v. *Wilson*, 106 Cal.App. 2d 716, 718, 719 [4-5] [236 P.2d 9]; *People* v. *Youders*, 96 Cal.App.2d 562, 568 [5] [215 P.2d 743].)

## INFORMATION

Defendant contends for the first time on appeal he was not given a copy of the information with a list of witnesses at his arraignment as required by Penal Code section 988. The record clearly shows that defendant was in court with his counsel and that he was duly arraigned. In the absence of a contrary showing we must presume that the official duty was regularly performed and that a true copy of the information was delivered to defendant. (*People* v. *Anderson*, 126 Cal.App.2d 702, 705 [4] [272 P.2d 805]; *People* v. *Lollis*, 177 Cal.App.2d 665, 672 [12] [2 Cal.Rptr. 420].) If there were any irregularities in the delivery of the information at the arraignment, it was waived when he failed to make timely objection. (*People* v. *Suesser*, 142 Cal. 354, 357 [2] [75 P. 1093].)

320

## DELAY IN ARRAIGNMENT AND TRIAL

 Defendant contends he was denied his right to be taken before a magistrate as required by Penal Code section 825. He states he arrived in Colton from Arizona on April 28, 1961, at 11:45 p. m. and was booked at midnight on that date, and that he was taken to San Bernardino and arraigned on May 2, 1961. It will be judicially noted that April 29, 1961, was a Saturday and April 30, 1961, a Sunday. (Code Civ. Proc., § 1875, subd. 9; *People* v. *Rudolph*, 28 Cal.App. 683, 685 [153 P. 721].) Saturdays are holidays in municipal court under Government Code section 72305. Penal Code section 825 excludes Sundays and holidays. The record before us shows no unreasonable delay. Furthermore, even if there was a violation of Penal Code section 825 there was no showing of prejudice, which is necessary if defendant is going to attack his conviction on this ground. (*People* v. *Hightower*, 189 Cal.App.2d 309, 312 [3-4] [11 Cal. Rptr. 198]; *People* v. *Lollis*, *supra*, 177 Cal.App.2d 665, 671 [12]; *People* v. *Smith*, 175 Cal.App.2d 396, 401 [7-8] [346 P.2d 484].) Defendant also contends there was failure to bring him to trial within 60 days, in violation of Penal Code section 1382. The record shows the information was filed May 26, 1961. Trial was set for July 17, 1961, but continued until August 14, 1961. The record does not show any objection raised by the defendant as to the delay. The reviewing court will have to assume that any postponement had been with the sanction of the defendant. (*People* v. *Baker*, 164 Cal.App.2d 99, 102-103 [2] [330 P.2d 240].) In his briefs defendant states there was a continuance at the request of the district attorney because of an absent witness. Application for continuance is within the sound discretion of the trial court and will not be reviewed except for the most cogent reasons. (*People* v. *Bronaugh*, 100 Cal.App.2d 220, 223 [3-4] [223 P.2d 256]; Pen. Code, § 1050.) There is no showing of prejudice. (*People* v. *McClure*, 133 Cal.App.2d 631, 634 [284 P.2d 887].) Furthermore, defendant did not object to the delay until after trial. His objection was not timely. (*People* v. *Encinas*, 186 Cal.App.2d 12, 16 [1] [8 Cal.Rptr. 624]; *People Contrerai*, 172 Cal.App.2d 369, 371 [1-6] [341 P.2d 849]; *People* v. *Bruce*, 141 Cal.App.2d 854, 856 [2] [297 P.2d 437].)

## SUFFICIENT EVIDENCE

Defendant contends there was not sufficient evidence to sustain the judgment. He specifically claims there is insufficient

proof of the necessary intent for burglary. In discussing the required intent for burglary the court states in *People* v. *Smith*, 84 Cal.App.2d 509, 511, 512 [1] [190 P.2d 941],

"While the existence of such an intent at the time the entry was made was necessary, in order to sustain a conviction of burglary, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence. Where the evidence is sufficient to justify a reasonable inference that such intent existed the verdict may not be disturbed."

 In the case at bar there is no question but that Hubbs Trucking office was burglarized and money stolen. The defendant was found to have in his possession less than three days later a sum of money consistent, in amount and in denominations, with that stolen. Defendant gave evasive answers or refused to answer questions about the money and failed at time of trial to show possession honestly obtained. The money found in defendant's possession was identified by a cut mark made by the owner, by staple marks and an iron stain, and by ink stains, as that taken from the safe. Defendant was identified as being in the area the same day the burglary was committed. As stated in *People* v. *Holley*, 194 Cal. App.2d 538, 540-541 [1-2] [15 Cal.Rptr. 44],

"The burglarious intent required by the statute in question may be inferred from the unlawful entry alone. [Citation.] "When property which was stolen in a burglary is found in the possession of a person soon after the theft and such person is unable or unwilling to truthfully account for the manner in which he acquired the possession of such property the possession and guilty conduct are presumptive evidence that such person obtained the property burglariously. [Citations.]" See also *People* v. *Citrino*, 46 Cal.2d 284, 288-289 [6-7] [294 P.2d 32]; *People* v. *Wells*, 187 Cal.App.2d 324, 328-329 [7-9] [9 Cal.Rptr. 384]; *People* v. *Brown*, 187 Cal.App.2d 651, 656 [6] [9 Cal.Rptr. 836].

 It was for the jury to decide whether defendant's evasive replies and refusal to answer showed a consciousness of guilt. (*People* v. *Romano*, 197 Cal.App.2d 622, 635-636 [7-10] [17 Cal.Rptr. 399].) The jury could also consider defendant's failure to testify where there is incriminating evidence he might explain. Such failure tends to indicate the truth of such evidence and inferences unfavorable to defendant are the more probable. (*People* v. *Adamson*, 27

Cal.2d 478, 488, 489 [10] [165 P.2d 3]; *People* v. *Hanz,* 190 Cal.App.2d 793, 802-803 [13] [12 Cal.Rptr. 282]; *People* v. *Wells,* 187 Cal.App.2d 324, 331 [15] [9 Cal.Rptr. 384].)

▮▮▮ Defendant argues there is inconsistent testimony of the waitress, Mr. Hubbs, and law enforcement officers. It was for the jury to weigh the evidence; the reviewing court will not reweigh it. There was sufficient evidence of defendant's guilt. (*People* v. *Foster,* 195 Cal.App.2d 651, 653 [3] [15 Cal. Rptr. 891]; *People* v. *Wells, supra,* pp. 327-329 [1-8].)

### EVIDENCE OF PROBABLE CAUSE

▮▮▮ Defendant contends there was prejudicial error in that the jury heard evidence of probable cause in regard to his search and seizure and arrest. This came in solely in response to an issue thereon raised by defendant himself. No suggestion was made that it be heard out of the presence of the jury. This evidence concerned testimony about defendant's carrying a knife, having a gun, having a felony record, and being charged with a felony in Arizona. When this testimony was being given the court gave instructions to the jury to limit the purpose to probable cause. It was received in evidence without any objection from the defense. Later the court, apparently on its own motion, instructed the jury to disregard all the testimony regarding probable cause and struck it from the record. Defendant's motion for mistrial was denied on the grounds it was not timely.

While it may not be proper for the jury to hear evidence regarding probable cause (*People* v. *Gorg,* 45 Cal.2d 776, 780-781 [5-8] [291 P.2d 469]; *People* v. *Accardy,* 184 Cal.App. 2d 1, 4-5 [2] [7 Cal.Rptr. 167]), it was not necessarily prejudicial error. (*People* v. *Russell,* 196 Cal.App.2d 58, 61-62 [1-2] [16 Cal.Rptr. 228].) Defendant failed to make timely objection to this evidence and in fact part of it was introduced by the defense. The defendant has waived any error regarding such evidence. (*People* v. *Romano, supra,* 197 Cal.App.2d 622, 637 [15]; *People* v. *Russell, supra,* 196 Cal.App.2d 58, 62 [2]; Witkin Cal. Evidence, § 700(b)(2), p. 732.)

### COUNSEL

Defendant complains his trial counsel, a public defender, did not adequately represent him. He urges that his constitutional rights re search and seizure and arrest were not protected and that his counsel did not put into evidence the affidavit regarding his extradition. The defendant's contention is without merit. The record is clear that defense counsel made

every possible effort before trial and during trial to object to what the defense considered was evidence illegally obtained. However, as we have seen, it is not true that the evidence was illegally obtained. Defense counsel also tried to bring in evidence regarding the extradition but this was properly denied by the court as not being in issue. There was no showing of inadequacy of counsel. (*People* v. *Daigle,* 194 Cal.App.2d 340, 342 [5] [15 Cal.Rptr. 53] ; *People* v. *Elledge,* 186 Cal.App.2d 656, 659 [1] [9 Cal.Rptr. 188] ; *People* v. *Mitman,* 184 Cal. App.2d 685, 690-691 [4] [7 Cal.Rptr. 712].)

### INSTRUCTION

▆▆▆ Defendant complains that the trial court instructed the jury that it must find defendant either not guilty or guilty of burglary in the second degree. Defendant contends that the matter of degree of burglary is a fact for the jury to consider. This is not always the case. (*People* v. *Montalbano,* 146 Cal.App.2d 624, 625 [1] [304 P.2d 36].) There was no evidence that the building was inhabited or that defendant was armed at the time of burglary. The instruction was proper, in defendant's favor, and he has no reason to complain. The jury was fully and properly instructed.

### MISCELLANEOUS

Defendant also complains of alleged false statements by witnesses; prejudicial misconduct by the district attorney, contradictions in the pleading of a civil suit by Hubbs against defendant and his testimony in court; that the police marked the money; that Hubbs was allowed to examine the money when the defendant was not present; and racial prejudice. Some of these complaints are due to defendant's inexperience in the law and in particular with pleading. None of these contentions is supported by facts appearing in the record and consequently may not be considered on this appeal. (*People* v. *Foster, supra,* 195 Cal.App.2d 651, 654 [5].)

We have made a careful study of the entire record and defendant's briefs of 147 handwritten pages and 89 typewritten pages. Defendant received a full and fair trial.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1963.