[Crim. No. 5564.   Second Dist., Div. One.   June 26, 1956.]

THE PEOPLE, Appellant, v. GILBERT ARTHUR JAUREQUI, Respondent.

556

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan, Fred N. Whichello and Lewis Watnick, Deputy District Attorneys, for Appellant.

August J. Goebel for Respondent.

FOURT, J.—This is an appeal by the People from an order setting aside an information, pursuant to the defendant's motion under Penal Code, section 995.

In an information filed by the district attorney of the county of Los Angeles the defendant, Gilbert Arthur Jaurequi, was charged with a violation of the Health and Safety Code, section 11500, in that on or about September 9, 1955, the defendant did unlawfully and feloniously have in his possession a preparation of heroin. A prior conviction of addiction during the year previous was for some reason or another not alleged.

The defendant was duly arraigned and made a motion under section 995 of the Penal Code which motion was granted and the defendant was discharged.

The facts of the case were substantially as follows. Lewis Nall, a police officer and one of the arresting officers in the case, on September 9, 1955, at about 8:45 o'clock p. m., just previous to the arrest, saw the defendant walking across a parking lot towards the street. The officer knew the defendant and knew very well his reputation in regard to narcotics, which was that he was a user and that he had been known to deal in narcotics. Also, the officer knew that the defendant was in that vicinity.

The officer approached the defendant and asked, "how his habit was getting along and how his marks were" and the defendant then voluntarily showed the officer his hands and arms. The officer qualified as a person who knows "something about narcotic users." The officer then observed "darkened spots on his arms, along the vein where they had been bruised" which "appeared like he had been injecting something into his vein."

As a result of the conversation and the observation of the defendant's arms, the officer placed him under arrest and thereafter searched him. On the search the officer found a piece of plastic paper containing 10 capsules of a brown powder inside the defendant's right sock, partially pushed down into his shoe. When asked if he had any more on him, defendant replied, "I think I have two or three more in my other shoe," and thereafter went over to the police car, took his left shoe off and shook it and removed two more capsules.

A chemist of the police department examined the package containing the two capsules and stated that in his opinion they contained heroin. From the package containing the 10

capsules he examined four of the capsules at random and stated that in his opinion they each contained heroin.

The appellant contends that there was reasonable and probable cause for the arrest of the defendant and that the resulting search was reasonable under the facts and circumstances of the case; that the evidence was not obtained in violation of the defendant's constitutional rights, and was admissible; that the defendant was legally committed for trial in the superior court, and that therefore the trial court erroneously granted the defendant's motion to dismiss the information under section 995 of the Penal Code.

Section 836 of the Penal Code provides among other things when a peace officer can make an arrest.*

It is settled that reasonable cause to justify an arrest is not necessarily limited to evidence which would be admissible at the trial on the issue of guilt (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]). "The term, reasonable or probable cause, has been defined: 'By "reasonable or probable cause" is meant such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty.' (*In re McCarty,* 140 Cal.App. 473, 474 [35 P.2d 568].)

"The term, probable, has been defined as meaning 'having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt.' (*Ex parte Heacock,* 8 Cal.App. 420, 421 [97 P. 77].)" (*People* v. *Novell,* 54 Cal.App.2d 621, 623-624 [129 P.2d 453].)

It was stated in *People* v. *Brite,* 9 Cal.2d 666, at page 687 [72 P.2d 122]: " 'Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true.' (Citing cases.)

Reasonable or probable cause is a question of law, where

---

*"'A peace-officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence.

"2. When a person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested. '

"5. At night, when there is reasonable cause to believe that he has committed a felony.''

there is no conflict to be decided by the court. (Citing cases.)''

There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances. (*Go-Bart Importing Co.* v. *United States,* 282 U. S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374].)

The appellant here contends that the officer had reasonable and probable cause for arresting the defendant for a misdemeanor being committed in his presence, namely, a violation of section 11721 of the Health and Safety Code—'Narcotic Addiction.' It has been held that an officer may question people who are outdoors at night (*People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531]), and it is not unreasonable for officers to seek interviews with suspects, and if in such inquiries the accused voluntarily reveals evidence against him, he may not later assert that he acted only in response to an implied assertion of unlawful authority. (*People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852].)

In the instant case the officer observed the defendant who had been known to him as a user of narcotics and further, that he had been known to deal in narcotics. The officer asked him a straight-forward, simple question with reference to ''how his habit was getting along and how his marks were.'' The defendant responded by showing the officer his hands and arms. The officer, at that time, apparently observed the arms and, from what he observed and the conversation he had with the defendant, under the circumstances, concluded that the defendant had been using narcotics, and thereupon placed him under arrest and proceeded to search him with the results as heretofore set forth.

A narcotic addict is defined as a person who unlawfully uses or is addicted to the unlawful use of narcotics (Health & Saf. Code, § 11009). Any person convicted of being an addict is guilty of a misdemeanor. It would appear that, under the code, addiction is a chronic rather than an ordinary acute offense, and one may be guilty of being a ''drug addict'' at any time and place he is found so long as the character remains unchanged, although then and there innocent of any act demonstrating his character.

Furthermore, one who violates section 11721 of the Health and Safety Code is a dissolute person (Pen. Code, § 647, subd. 5), which is defined to mean ''indifferent to moral restraint, given over to dissipation or vicious courses, . . ..'' (New Century Dictionary, vol. I, p. 438.) In *People* v.

*Scott,* 113 Cal.App. Supp. 778, 783 [296 P. 601], the court, in discussing vagrancy, said:

"Webster's Unabridged Dictionary defines dissolute as 'loosed from restraint, unashamed, lawless, loose in morals and conduct, recklessly abandoned to sensual pleasures, profligate, wanton, lewd, debauched.' . . . Conceding that vagrancy is chronic rather than acute, . . . we think the existence of such a chronic condition may be ascertained from a single examination, if the characteristic reactions of that condition be found present."

▇ It is not necessary to " '. . . have positive evidence to prove that a man is a dissolute and lewd person at the time of his arrest. . . .' " (*People* v. *Allington,* 103 Cal.App. 2d Supp. 911, 913 [229 P.2d 495].) ▇ In the instant case the facts and circumstances known to the officer would justify him in making an arrest without a warrant as fully as in the case of any other misdemeanor committed or attempted in his presence. (*People* v. *Craig,* 152 Cal. 42, 46 [91 P. 997].)

▇ The court will take judicial notice of the fact that the inordinate use of a narcotic drug tends to create an irresistible craving and forms a habit for its continued use until one becomes an addict, and he respects no convention or obligation and will lie, steal, or use any other base means to gratify his passion for the drug, being lost to all considerations of duty or social position. (*People* v. *Bill,* 140 Cal.App. 389, 394-395 [35 P.2d 645].) The unlawful use of narcotic drugs often tends to moral, mental and physical destruction. (*In re Hallawell,* 8 Cal.App. 563, 565 [97 P. 320].)

▇ In this case the officer could reeasonably have believed that the defendant's status had not changed because of what he saw from the markings on the defendant's arms, and when considered with the fact that the officer knew the defendant to be a narcotic user and dealer, he was in our opinion reasonable in making the arrest. ▇ To observe that which is open and patent is not a search (*Smith* v. *United States,* 2 F.2d 715). In *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855], the court cited the Smith case and others and stated:

"Since looking through a window does not constitute an unreasonable search . . . the officers were entitled to act upon what they saw and arrest defendant."

▇ What the officer saw was not a search, but an observation of what appeared on the defendant's arm. There is no

merit to the contention that what the officer saw was an unreasonable search. Whether the defendant at the moment of the arrest was under the influence of a drug is unimportant. (*People* v. *Berner*, 28 Cal.App.2d 392, 394 [82 P.2d 617].)

The defendant contends further that the officer testified to no verbal act on the part of the defendant which could be construed as a waiver of his constitutional rights, but on the contrary, that it can be inferred that the defendant merely acquiesced or submitted to the authority of the officer when he was asked how his marks were. There is nothing in the record, so far as we are able to find, which would indicate that the defendant did anything other than that which was entirely voluntary on his part, and as was said in *People* v. *Michael, supra,* at page 780, ''Neither defendant nor her mother testified at the preliminary hearing, however, and the testimony that was given indicates only that the evidence was voluntarily produced in response to a reasonable inquiry.''

Counsel for the defendant contends that the court can presume that official duty has been regularly performed (Code Civ. Proc., § 1963, subd. 15), and that had the officer observed fresh marks he, in the course of his duties as a peace officer, would have made note of such evidence and testified to the fact. At the preliminary examination the officer was asked the question, ''What did you observe in connection with his arms?'' The officer answered, ''Traces of where he had been using narcotics.'' A question was then started as follows: ''It appeared to you as though they were marked——,'' but before the question was even finished counsel for the defendant moved to strike the answer of the witness to the previous question, giving no grounds or reasons therefore, and for what reason we do not know, the court granted the motion to strike the answer. It would seem therefore, that counsel for the defendant himself prevented any elaboration upon what the officer observed.

The defendant further contends that the record is silent as to the cause of the arrest, and therefore there was no compliance with section 841 of the Penal Code. Where it is reasonably apparent from the defendant's conduct at the time of the arrest that he knew the person making the arrest was an officer, then it is immaterial whether or not the officer literally complied with section 841. (*Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 294.) Where the defendant is arrested while engaged in the commission of a crime, the arresting officer need not inform him of his intention to

make an arrest, the cause of the arrest and the authority to make it. (*People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29] ; *People* v. *Rios,* 46 Cal.2d 297, 299 [244 P.2d 39].)

For the foregoing reasons the order appealed from is reversed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied July 9, 1956, and respondent's petition for a hearing by the Supreme Court was denied July 24, 1956.