[Crim. No. 5940.   Second Dist., Div. Three.   Nov. 20, 1957.]

THE PEOPLE, Appellant, v. SAMUEL PITTMAN JOHNSON, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan, Fred N. Whichello and Robert Lederman, Deputy District Attorneys, for Appellant.

No appearance for Respondent.

SHINN, P. J.—Samuel Pittman Johnson was charged by information with a violation of section 11500 of the Health and Safety Code, in that he willfully, unlawfully and feloniously had in his possession a preparation of heroin. It was also alleged that he had previously been convicted of a violation of section 11721 of the Health and Safety Code, a misdemeanor. Upon the preliminary hearing he was committed for trial. He made a motion to set aside the information under section 995 of the Penal Code on the ground that he had been committed without reasonable or probable cause. The motion was granted and the People appeal. No brief has been filed by or on behalf of defendant.

The evidence at the preliminary hearing established the following facts. D. W. Beckman is a police officer for the city of Los Angeles assigned to the Georgia Juvenile Division. Early in the evening of January 27, 1957, and also several days previously, Beckman received information that a man named Wilson was "dealing heroin" in the Rose Room, which is a bar and café located west of the lobby of the Morris Hotel on East Fifth Street in Los Angeles. Beckman and his partner, Officer Evans, went to the Rose Room at approximately 11:30 p. m.; they entered the café part of the establishment, walked to the back of the room, and turned to go into the

bar. As they did so, Beckman saw defendant walking toward him in the company of another man known as "Too Sweet," whom the officer knew to be a narcotics user. Beckman did not know defendant and had never seen him before.

As defendant passed by him, the officer observed that the pupils of Johnson's eyes appeared to be pinpointed. In the officer's opinion, contraction of the pupils of the eye is a characteristic of narcotics addicts. Beckman then stopped defendant, identified himself as a police officer, and after ascertaining defendant's name, he asked Johnson "if he was using stuff." Defendant replied that "he used to use it, but he wasn't using it regularly any more, he chippied a little bit now and then." During the conversation, Beckman noticed that Johnson's eyes appeared to be unusually red and that his clothing gave off a strong and distinctive odor, which, from the officer's previous experience, he identified as possibly or probably the odor of marijuana.

The officer then asked defendant if he had been "blasting any pot" (i.e. smoking marijuana) that evening. Johnson replied that he had not blasted any pot that evening, but that he did blast a little pot the day before. Upon being asked whether he was using heroin, defendant said that he had not fixed that evening but that he had fixed on the afternoon of the previous day. The officer testified that the expression "fixed" signified the taking of heroin by injection. Beckman then asked defendant whether he had any weapons on his person and attempted to feel Johnson's pockets. Defendant said: "Man, keep your hands away from my pockets." The officer asked: "Do you have a knife in your pocket?" Defendant replied that he had, and removed a knife from his pocket and handed it to the officer.

Upon being asked whether he had any marks defendant said that he did not have any marks and said: "I will show you my arms. You won't find any marks." Defendant took off his coat and exhibited his left arm. Beckman examined defendant's arm and noticed a red mark on the inside of the left elbow; the mark was about one inch in diameter and had a spot of blood in the center. Johnson denied having injected a narcotic into the mark that evening; he said he had "fixed there" five days previously.

The officer told defendant that he was sure he was under the influence of marijuana and placed him under arrest for illegal use of narcotics. Officer Evans then made a search of defendant and extracted from defendant's right coat pocket

a paper bindle which was proved to contain heroin. The narcotic was received in evidence over defendant's objection that it had been obtained by means of an unlawful search and seizure.

The question is whether the evidence disclosed probable cause for committing defendant for trial. ■ There was probable cause if there was evidence which would lead a person of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178 [281 P.2d 250].) ■ If the fact that defendant was unlawfully in possession of a narcotic was established by competent and admissible evidence, probable cause was shown. (*Rogers* v. *Superior Court,* 46 Cal.2d 3 [291 P.2d 929].) If the only evidence produced against him was incompetent and inadmissible, there did not exist probable cause to hold him to answer and the court properly granted his motion to set aside the information. (*Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23].)

The People argue that the search of defendant's person was an incident to the arrest of defendant and that the arrest was valid because the officers had reasonable cause to believe that Johnson was committing a public offense in their presence. (*Coverstone* v. *Davies,* 38 Cal.2d 315, 320-321 [239 P.2d 876].) We agree.

■ In our opinion, there was reasonable cause for the arrest of defendant. From the information they had previously received, the officers had reason to believe that illegal narcotics activities were taking place on the premises. They saw defendant in the Rose Room in the company of a man whom they knew to be a narcotics addict. Officer Beckman observed that defendant's eyes were unusually red, that the pupils of his eyes were contracted, and he also detected the odor of marijuana on defendant's clothing. These observations, if made by one qualified to give expert testimony, together with the admissions made by defendant, would have warranted a good faith belief that defendant was addicted to the unlawful use of narcotics and was at that time committing a violation of section 11721 of the Health and Safety Code, a misdemeanor.[1] ■ The offense of the unlawful use

---

[1] "'No person shall unlawfully use or be addicted to the unlawful use of narcotics. No person shall be under the influence of narcotics except when such narcotics have been administered by or under the direction of a person licensed by the State to prescribe and administer narcotics. . . .'"

or addiction to the unlawful use of narcotics may be committed by a user at any place and at any time so long as he retains the character of an addict and may be proved by any competent evidence of such unlawful use or addiction. (*People* v. *Jaurequi*, 142 Cal.App.2d 555, 560 [298 P.2d 896].) There was sufficient evidence of the officer's qualification to give testimony as an expert witness on the subject of narcotics addiction. It cannot be said that upon a trial a court or jury could not reasonably conclude that the testimony of the officer was sufficient to prove that Johnson, at the time of his arrest, was under the influence of a narcotic.

We are therefore of the opinion that the circumstances justified a reasonable belief that Johnson was at the time an unlawful user and addicted to the unlawful use of narcotics, that the arrest was lawfully made, and that the search of defendant's person was reasonable and proper. The heroin was not obtained by the officers through an unlawful search and seizure. The evidence before the magistrate disclosed probable cause for committing defendant for trial.

The order setting aside the information is reversed.

Wood (Parker), J., and Vallée, J., concurred.