[Crim. No. 7568. Second Dist., Div. One. Oct. 3, 1961.]

THE PEOPLE, Respondent, v. CLARENCE MURL RUSSELL, Appellant.

Warren L. Ettinger for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Matthew M. Kearney, Deputy Attorneys General, for Respondent.

LILLIE, J.—The jury found defendant guilty of possession of heroin in violation of section 11500, Health and Safety Code and a prior narcotic felony conviction in 1953.

Deputy Copping had been with the sheriff's narcotic detail since February 1958; he was established by experience, training and study as qualified to testify concerning narcotic use and addiction. Deputy Burley had been four and a half years with the narcotics division and was similarly qualified.

Between 5:30 and 6 p. m., in the course of a narcotic investigation, Deputies Copping and Burley went to 12306 South Wilmington. Around 6:40 p. m. they observed one Goodrey drive an automobile into the driveway; seated in front with the driver were defendant and Brenda Wagner. Goodrey and Brenda ascended the stairway over the garage and went into defendant's apartment; defendant, who had walked to the rear, followed. Several seconds later the officers went to defendant's door and knocked. Brenda came to the door, opened it and asked what they wanted. The officers saw old scar tissue and puncture wounds in her inner arm area. Copping formed the opinion she was addicted to the use of narcotics; Burley formed the opinion as to her illegal use of narcotics and arrested her. The officers then stepped inside the apartment; Burley saw Goodrey, whom he recognized as having handled in reference to narcotics about a month before, in the bathroom. Copping saw defendant standing in the kitchen next to a table. As he talked to him, defendant turned away and put his left forefinger and his thumb in his left pants' pocket; Copping told defendant to keep his hands on the table, that a narcotics investigation was going on. During this time Copping observed on defendant's arms scar tissue indicative of illegal intravenous injections of a narcotic; the defendant had some puncture wounds over which were scabs revealing recent use of narcotics (between 10 and 14 days). It was Copping's opinion defendant was addicted. Defendant again put his forefinger and thumb in his left pants' pocket; Copping then "shook" him down for weapons; he "patted"

the outside of the pocket then put his hand in along with defendant's hand and pulled out a cigarette package. Copping held it up, looked at it and saw seven capsules of heroin (Exhibit 1) between the wrapper and the celophane. Asked where he got it, defendant said he found it in the park, put it in his pocket and came home without knowing heroin was in it. He denied all knowledge of heroin.

Defendant took the stand only to give his name; he neither testified nor put on a defense.

Appellant contends that the trial court erred in permitting evidence on the issue of probable cause to be received in the presence of the jury.　　It is settled that reasonable or probable cause is a question of law to be decided by the trial court (*People* v. *Brite*, 9 Cal.2d 666 [72 P.2d 122]; *People* v. *Jaurequi*, 142 Cal.App.2d 555 [298 P.2d 896]); the lower court did rule that probable cause existed for defendant's arrest before the issue of guilt was submitted to the jury. Appellant relies upon *People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469], to the effect that "it is incumbant [*sic*] upon the court to determine the question of admissibility in the absence of the jury." (A.O.B., p. 22.) This is not the holding of the *Gorg* case. There defendant contended that the trial court erred in determining the question of admissibility of marijuana and certain paraphernalia outside of the presence of the jury and in not submitting it to the jury. The court held that the question was one of law for the court; it could see no purpose in having the jury determine the issue and "evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were *required* to pass on the legality of the search or seizure" (p. 781) (emphasis added). The ruling of the court was that it was not error for the trial court to determine the admissibility of the evidence outside of the presence of the jury, and not error for the court not to submit the issue to it. Following *People* v. *Gorg*, 45 Cal. 2d 776 [291 P.2d 469], the court in *People* v. *Thompson*, 144 Cal.App.2d Supp. 854 [301 P.2d 313], held that the determination of reasonable cause shall be made by the trial court and not left in whole or in part to the jury. Both cases hold that reasonable cause is for the trial court; in neither does the court say it is error to permit the jury to hear such evidence although they both indicate that if otherwise inadmissible hearsay is received it should not be heard by the jury. ⌐ Thus, the manner in which the issue of probable cause is heard during the trial of a case and determined by the

lower court appears to be a matter within its discretion; and in the absence of any showing here of abuse of discretion or prejudice, we hold there was nothing in the procedure used by the trial court requiring a reversal.

First, defendant did not interpose timely proper objections (*People* v. *Millum,* 42 Cal.2d 524 [267 P.2d 1039]), indeed invited the court to proceed as it did; second, the record discloses no hearsay offered on the issue of probable cause; and third, the evidence was also relevant and material on the issue of guilt.

Neither the testimony of Deputy Burley nor that of Deputy Copping relative to the arrest of Brenda Wagner was objected to by defendant; nor did he at any time move to strike this testimony for any cause. The only objection made during the testimony of Brenda's arrest went to Copping's qualification to testify concerning narcotic use and addiction. It was only after Copping testified to Brenda's arrest and his entry into the apartment that defendant mentioned probable cause and then only with relation to further testimony. Defendant's counsel then sought to inquire of Copping on *voir dire* "to find out the justification for entering into an apartment." What transpired thereafter bears on the apparent willingness of defense counsel to have the matter proceed before the jury over the objection of the deputy district attorney. The latter objected to the *voir dire* examination on the ground of irrelevancy and immateriality; then he said to the court, ". . . if it is relevant and material on the issue of probable cause, that should be determined *outside* the presence of the jury." Defense counsel insisted, finally, after a conference in chambers which was not reported, and pursuant to his request, the trial court permitted defense counsel to question Copping on *voir dire* whereby he established that the officers had no warrants. The defendant himself introduced the issue of probable cause before the jury and then after his questions on *voir dire,* objected to further questions because there was no showing of probable cause. The court overruled the objection but advised him if it was not connected up to later make a motion to strike. No motion was ever made. Then defendant objected to the issue's being heard by the court in the presence of the jury because of "exceedingly damaging hearsay testimony." But the record shows that thereafter no hearsay testimony was offered on the issue of probable cause and no motion was made to strike any prior testimony. Copping testified only to what he observed and

heard in the presence of defendant and his conversation with the latter; his testimony was not based on hearsay but on direct knowledge. Further, it was relevant and material to the issue of defendant's guilt.

██ Material to the issue of guilt was testimony of the marks on defendant's arm and the officer's opinion concerning them; such evidence went to the question whether defendant, contrary to his denial, knew what heroin was and that he had it in his possession. Such knowledge is an essential element of the offense of possession (*People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40]) and was properly received by the jury on the issue of guilt. (*People* v. *Salas*, 17 Cal.App.2d 75 [61 P.2d 771].)

Appellant asserts he was restricted in the scope and extent of cross-examination by the trial court's refusal to hear the issue of probable cause without the jury. The record shows that defendant cross-examined both witnesses at length; neither this court nor the court below were told in what manner defendant was restricted, what he sought to develop on cross-examination and could not, or how he was in any way prejudiced.

On the issue of probable cause, appellant claims there was no showing sufficient to arrest Brenda Wagner or probable cause to arrest him.

██ "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 183 [281 P.2d 250]; *People* v. *Fischer*, 49 Cal.2d 442 [317 P.2d 967]; *People* v. *Ingle*, 53 Cal.2d 407 [348 P.2d 577]; *People* v. *Kilvington*, 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73].)

██ Relative to Brenda's arrest—a police officer may make an arrest without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence. (Pen. Code, § 836, subd. 1.) Section 11721, Health and Safety Code makes any person who uses, is under the influence of, or is addicted to the use of narcotics, guilty of a misdemeanor. (*People* v. *Jaurequi*, 142 Cal.App.2d 555 [298 P.2d 896]; *People* v. *Johnson*, 155 Cal. App.2d 369 [317 P.2d 1000].) ██ In the conduct of a narcotic investigation, the officers had a right to knock on the door; Brenda responded and asked them what they wanted. It was then the officers observed the scar tissue and puncture

wounds on the inner arm that led them, as experienced narcotic officers, to the opinion "she was addicted to the use of narcotics" (Copping) and "as to her illegal use of narcotics" (Burley). The deputy who arrested her testified that the marks and old scar tissue were indications of her illegal use of narcotics; he was a qualified expert in the nature and effects of narcotic use and addiction. Whether she at the moment of the arrest was under the influence of a drug is unimportant. (*People* v. *Jaurequi*, 142 Cal.App.2d 555 [298 P.2d 896].) Clearly his arrest of Brenda, although not itself an issue inasmuch as she was not charged with defendant herein, was based on reasonable cause. Her arrest being valid the entry of the officers into the apartment was lawful. (*People* v. *Alcala*, 169 Cal.App.2d 468 [337 P.2d 558].)

Thereafter, in the course of Copping's investigation he found defendant in the kitchen. He observed puncture marks and scabs on the inner arm indicative of illegal intravenous injections of narcotics and that usage had taken place within the previous 10 to 14 days. It was unnecessary to search defendant for scars; they were in plain sight. "To observe that which is open and patent is not a search." (*People* v. *Jaurequi*, 142 Cal.App.2d 555, 561 [298 P.2d 896].) In addition to the observation of defendant's arms by an officer experienced in the matter of addiction (*People* v. *Rios*, 46 Cal.2d 297 [294 P.2d 39]), was the furtive conduct of defendant, while the officer talked to him, of attempting several times to put his hand in his pocket, which eventually led to the finding of the narcotic. We can only conclude that the officer had reasonable cause to arrest defendant.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.