[Crim. No. 12260.    Second Dist., Div. One.    June 20, 1967.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  CHARLES
TAZZ  SHERMAN,  Defendant  and  Appellant.

Julius A. Dix, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General. and Stanton Price, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant and one Clark were charged with three counts of armed robbery; the information also alleged seven prior felony convictions. Clark pleaded guilty to the armed robbery charged in count I; defendant was convicted by a jury on counts I and III, and acquitted of count II. Further, the jury found that at the time of the robberies,

defendant was armed with a deadly weapon—a $CO_2$ Plainsman .175 pellet gun; later a motion to strike the finding was denied. No disposition was made of the first allegation that in 1946 he had been convicted of a violation of section 503, Vehicle Code, but defendant admitted six other prior felony convictions for which he served time in the state prison—1948, violation, section 476a, Penal Code; 1949, escape from state prison; 1953, robbery; 1959, violation, Dangerous Weapons Control Law; 1959, violation, section 476a, Penal Code; and 1962, violation, section 470, Penal Code. Defendant appeals from the judgment of conviction.

The following evidence was presented by prosecution witnesses on count III.

Around midnight on July 19, 1965, defendant and codefendant Clark walked into Dean's Liquor Store. One went to the beer counter, the other to a counter where the clerk, Mr. Berry, was working and asked for a pint of Old Taylor. Berry placed the bottle on the counter; defendant then asked for a carton of Pall Mall cigarettes which Berry started to put together with the liquor in a sack. Berry rang up the sale and turned to ask for the money when he saw defendant point at him a gun resembling Exhibit 1; defendant told him to ''Put all the money in the sack.'' His partner came from the beer counter and stepped behind Berry, placing something against his ribs. Berry took all of the money out of the cash register and put it in the sack. Defendant ordered, ''Give me what is under the tray''; Berry said nothing was there, but as defendant went by an open drawer he took out a box, then took the sack, the cigar box and beer and departed. His partner remained with gun in hand and said, ''Give us five minutes or you are a dead duck.'' They took approximately $100 to $200. Ten minutes later police officers arrived to whom Berry described the two men.

The following is the evidence in support of the armed robbery charged in count I.

Around 8:45 p.m. on July 28, 1965, Clark and defendant, wearing a green plaid suitcoat over brown levi-type trousers, dark glasses and a narrow-banded blue-grey straw hat, came into the El Camino Liquor Store several times and looked around. Finally Clark walked into the store followed by defendant, although it did not appear that the two were together. Clark went to the beer box and defendant to the delicatessen; Clark picked up a six-pack of Budweiser while defendant brought a large can of V-8 juice to the counter where

Mr. Kerr, the clerk, was standing. Defendant was leaning against the counter so that his lower body was hidden from Kerr's view; when he straightened up he had a gun similar to Exhibit 1 in his hand pointed at Kerr. Defendant told Kerr he would kill him if he tried anything; Clark went around to Kerr's side of the counter and the two men told him to put the money in the paper sack he was holding. Kerr complied but Clark said, "I must have more," adding that he knew there was more cash around because he had been watching the store. Kerr said he had no more cash available. Defendant told Kerr not to do anything for the next five minutes as they would be watching and would kill him if he tried anything; they took a little over $79. When the men left, Kerr pressed an alarm which summoned the police who arrived 10 minutes later. He gave the officers a description of the two men and turned over to them the can of V-8 juice defendant had picked up. An officer assigned to the crime laboratory identified the prints taken from the V-8 juice can left behind at El Camino Liquor Store as belonging to defendant.

The defense consisted of alibi testimony; defendant did not testify.

Appellant claims first that "the issue of probable cause should not have been argued before the jury since the facts were not in issue." Although he details 10 pages of testimony, he does not set out what, if anything, either counsel argued before the jury on the issue of probable cause, and the arguments of counsel are not part of the record before this court. The evidence to which appellant *now* objects is found in the testimony of Officer Peterson who testified that around 2:30 a.m. on July 29, 1965 (about six hours after the El Caminor Liquor Store robbery), he was dispatched to assist the California Highway Patrol who had found a man with a gun on the Long Beach Freeway; when he arrived the state highway patrol officer told him that he had stopped to determine why two vehicles were parked on the freeway and while talking to the occupants of one car had been informed that the occupant (defendant) of the other had a gun in his waistband, he then talked to defendant and took the gun from him; the state highway patrol officer turned over to him the gun marked Exhibit 1; previously he had received from his sergeant reports of various robberies which had been committed in the area which contained a description of two men involved in the several robberies hereinabove set out, as well as a description of the weapon used; the men and

the gun matched the descriptions; he placed defendant under arrest for carrying a concealed weapon and for robbery and advised him of his constitutional rights; thereafter he noticed in the car a black straw hat and two pairs of sunglasses, and inquired if he could look in the car; defendant said that he did not mind, and inside he found a package of Roi-Tan cigars, a cardboard package labeled "Budweiser Beer," a flip-top can of beer and a license plate; he asked defendant if he had been carrying a gun and defendant answered yes; when asked why, defendant said he had been target shooting in San Bernardino and Riverside; asked if he had worked that day, defendant said, "No, not on Sunday"; told that it was Thursday, defendant said, "Yes, it is; isn't it? But it is my Sunday"; defendant gave him two accounts of his whereabouts that night—first, he said he had just recently moved to 1220 Cedar where he had remained until 6 p.m. when he went to Dino's for dinner and from then on he had been alone; then, he corrected himself and said he had been at the Alana Club until 1 p.m. and from there he had gone to his sister's, then to his girl friend's house where he stayed the rest of the evening.

While it is settled that reasonable or probable cause is a question of law to be decided by the trial court (*People* v. *Brite,* 9 Cal.2d 666, 687 [72 P.2d 122]; *People* v. *Jaurcqui,* 142 Cal.App.2d 555, 559-560 [298 P.2d 896]), it is not unusual for evidence on the issue to be received in the presence of a jury. The manner in which probable cause is heard during the trial of a case and the issue determined by the lower court, is a matter within the discretion of the trial judge, the exercise of which is not subject to appellate review in the absence of a showing of abuse of discretion or prejudice. (*People* v. *Russell,* 196 Cal.App.2d 58, 61-62 [16 Cal.Rptr. 228].)

Appellant insists that there was no issue of probable cause in the lower court, but the record does not support him; it appears that defense counsel not only failed to object on that ground to the testimony of Officer Peterson, leading all counsel and the judge to believe that such issue existed, but by his statements and conduct acknowledged that in fact probable cause was an issue. While defense counsel interposed numerous objections to questions of Officer Peterson, they were made on the grounds of "hearsay," "no foundation laid" or "incompetent, irrelevant and immaterial"; not one related to the nonexistence of any issue of probable cause. Thus, in the absence of timely objection appellant now is in

no position to raise the matter on appeal. (*People* v. *Millum,* 42 Cal.2d 524, 528 [267 P.2d 1039] ; *People* v. *Mitchell,* 209 Cal.App.2d 312, 322 [26 Cal.Rptr. 89].) Moreover, part of the evidence to which he now complains was developed by defense counsel on *voir dire* examination and cross-examination of Officer Peterson. (*People* v. *Dickenson,* 210 Cal.App.2d 127, 132 [26 Cal.Rptr. 601] ; *People* v. *Mitchell,* 209 Cal.App.2d 312, 322 [26 Cal.Rptr. 89] ; *People* v. *Russell,* 196 Cal.App.2d 58, 62 [16 Cal.Rptr. 228].)

Further, and of greater significance, defense counsel consented to the presentation of evidence on probable cause, inviting the testimony that followed. At the outset of Officer Peterson's direct examination, defense counsel objected on the ground of hearsay to a question calling for information he had received from his superior officer before proceeding to the freeway. The deputy district attorney said, *"I assume, then, there is no objection on probable cause.* If so, then I won't go into it.

"Mr. ALLEN [defense counsel] : *If it is for that purpose, I will withdraw the objection."* (Italics added.)

██ The record is replete with discussions among the prosecutor, defense counsel and the judge on the matter of probable cause based on the obvious assumption by all three that an issue thereon existed. For example, the prosecutor asked the officer what information concerning robberies in the area he had before going to the freeway; defense counsel objected to the question as calling for hearsay; the court then asked, "It has to do with probable cause and is limited to that?" and the prosecutor answered, "Yes. *So long as there is any contest on it.* I thought I had better put it all in, Your Honor" (italics added); the court agreed, and defense counsel said nothing, thereafter objecting only for lack of a proper foundation asking for the source of the officer's information, saying, "unless we go back of that source of it, . . . it would not be admissible for probable cause." Also, when the officer was asked about the information given to him by his sergeant, defense counsel objected on the ground of "no foundation laid"—"We are proving the possible commission of several crimes here from reports based upon unknown sources not shown to be reliable in any way, and under the guise of probable cause for making this arrest. . . ." His only objection thereafter was that certain evidence was not part of the issue of probable cause. The above colloquies and objections carried the obvious inference that probable cause was an issue to be

determined in the case. Twice during the examination of Officer Peterson, the trial judge, without objection, instructed the jury, "This is all being received only on the issue of probable cause for the arrest. And all of this testimony, ladies and gentlemen, is limited to that purpose and is not offered for the purpose of establishing guilt or innocence."

The first intimation of defense counsel that he did not think there was any question "requiring any establishment of probable cause for the arrest," appears only after argument to the jury[1] and before the instructions were read. But his statements then, fail to impress us that in good faith he did not believe that an issue of probable cause existed. Nor was the judge impressed, for he reminded him that at the outset he conceded that probable cause was an issue and consented to evidence being taken thereon, developing part of it himself, and that by his conduct and statements led all of them to believe that such an issue existed. It is apparent that defense counsel's real concern was that because of defendant's long criminal record he feared that the jury might infer from the fact that Officer Peterson had reports of robberies in the area and various descriptions, that he had been involved in other robberies. But after the judge pointed out that it was he who disclosed the contents of the reports by cross-examination of the officer and he who brought the information to the attention of the jury, defense counsel then shifted his objection to the absence of any showing that the sergeant who gave the officer the reports had a "reliable informant." This, too, was without merit, and the trial judge had previously properly ruled that such objection was not valid. However, at defendant's request, the trial court gave the jury a cautionary instruction.[2]

▇ In the light of the entire record, particularly the testimony of the eyewitnesses who positively identified defendant as the robber and the trial court's instructions to the jury, we fail to see how defendant suffered any prejudice from the testimony that prior to arresting him Officer Peterson had

---

[1] The oral arguments are not part of the record on appeal, but subsequent statements by the prosecutor, defense counsel and trial judge disclose that both counsel commented on the evidence of probable cause.

[2] "The witness Peterson was interrogated regarding the reasons for arrest of the Defendant. This testimony was received for the limited purpose of determining whether or not there was probable cause for his arrest. This testimony relating to the reason for the arrest was not offered for and should not be considered in determining the issue of guilt or innocence of the Defendant."

been informed by his superior officer of reports of various unsolved robberies in the area which included descriptions of suspects and their weapons, one of which matched defendant and the gun he carried. Moreover, he failed to make timely objection to the evidence, part of which he himself introduced. ▇ If any error existed, defendant by his silence and conduct waived it. (*People* v. *Romano,* 197 Cal.App.2d 622, 637 [17 Cal.Rptr. 399]; *People* v. *Russell,* 196 Cal.App.2d 58, 62 [16 Cal.Rptr. 228]; *People* v. *Mitchell,* 209 Cal.App.2d 312, 322 [26 Cal.Rptr. 89].)

Setting forth seven pages of argument to the trial judge on his motion to strike the jury's finding that at the time of the robberies he was armed with a deadly weapon, to wit, $CO_2$ Plainsman, .175 pellet gun, appellant contends "it was error for the court to find that a dangerous weapon was synonymous with a deadly weapon." He claims that no evidence was taken on the issue of whether the gun constituted a deadly weapon, therefore, it cannot be construed as such.

We do not read in the record any finding of the trial judge that a dangerous and deadly weapon are synonymous; all he declared in denying defendant's motion was that he would not disturb the finding of the jury that defendant was armed with a deadly weapon. ▇ Actually, the evidence shows, and defendant conceded, that the gun was a "dangerous weapon"; this is sufficient to support the conviction of armed robbery. Section 211a, Penal Code, provides that a robbery "perpetrated . . . by a person being armed with a dangerous or deadly weapon . . . is robbery in the first degree"; and section 213, Penal Code, provides that robbery in the first degree is punishable by imprisonment in the state prison "for not less than five years." The words "dangerous or deadly" are used disjunctively. "Thus, it is not necessary to show that the weapon is deadly so long as it can be shown that it is dangerous. (*People* v. *Coleman,* 53 Cal.App.2d 18, 28 [127 P.2d 309].)" (*People* v. *Aranda,* 63 Cal.2d 518, 532 [47 Cal. Rptr. 353, 407 P.2d 265].) Any gun, even a short one, may be a "dangerous weapon" within the meaning of the statute since it is capable of being used as a bludgeon (*People* v. *Hood,* 160 Cal.App.2d 121, 122 [324 P.2d 656]), and it is not necessary to show that the gun could fire or was loaded (*People* v. *Raleigh,* 128 Cal.App. 105, 108 [16 P.2d 752]; *People* v. *Egan,* 77 Cal.App. 279, 284 [246 P. 337]), or that it was real (*People* v. *Ward,* 84 Cal.App.2d 357, 360 [190 P.2d 972]), or that defendant intended to use or actually used it (*People* v.

*Coleman,* 53 Cal.App.2d 18, 28-29 [127 P.2d 309] ; *People* v. *Raleigh,* 128 Cal.App. 105, 110 [16 P.2d 752] ; *People* v. *Aranda,* 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265] ). In any event, one victim testified that when defendant pointed the gun at him in the El Camino Liquor Store "it did appear to be some kind of a luger type weapon. . . . It appeared to be an automatic like that," and that pointing the gun at him defendant threatened to kill him; the other victim testified that when the gun was pointed at him in Dean's Liquor store "It looked like a German Luger to me." █ A metal gun the size and shape of Exhibit 1, which has the appearance of a Luger, is sufficient to constitute a "dangerous weapon" within the meaning of the statute.

Likewise, the evidence demonstrates that Exhibit 1 is a "deadly weapon" under section 211a. We have examined the weapon—a $CO_2$ Plainsman .175 pellet gun—and while the safety has been broken off, the weapon is functioning. The testimony of Mike Tafoya, a defense witness, establishes that the gun was operable when it was taken from defendant on the freeway; he testified that he watched the officer disarm defendant, and that the gun "looked like a luger . . . and the officer proceeded to fire it down the ravine." Apparently defendant believed the gun to be operable and lethal for in the process of the robberies. pointed it at the two victims, threatening to kill them; and surely the two men believed it was capable of taking human life. █ The owner of the gun, Melvin Provancha, also a defense witness, testified that the gun could project a missile—BBs and "probably darts" —over "quite aways" with force enough to shoot gophers and break a light bulb at 10 or 12 feet; that defendant went out to shoot gophers one Sunday with the gun, as also he had done; that the gun was capable of putting out an eye and that it might kill a baby if hit between the eyes. The trial judge in denying defendant's motion to strike the jury's finding that defendant was armed with a "deadly weapon" under the evidence classified the weapon as a gun; we agree that the evidence was sufficient to justify the jury's finding.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied July 11, 1967.